IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BARBARA LYNN THOMAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 11-CV-3055 |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Barbara Thomas appeals from the denial of her application for Social Security Disability Insurance Benefits and Supplemental Security Income (collectively "Disability Benefits") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Thomas has filed a Motion for Summary Judgment (d/e 20), and Defendant Commissioner of Social Security has filed a Motion for Summary Affirmance (d/e 22). The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference</u>

entered October 3, 2011 (d/e 17). For the reasons set forth below, the Decision of the Commissioner is affirmed.

## STATEMENT OF FACTS

Thomas was born on December 15, 1945. She completed high school in 1963. She also received training as a certified care giver in 2006. Answer to Complaint (d/e 15), attached Certified Transcript of Record of Proceedings Before the Social Security Administration (R.), at 35. She last worked as a care giver in a residence home beginning in 2005 until January 1, 2007. R. 36, 39. She previously worked for two years as a cashier at Walmart. R. 47-48.

Thomas has an extensive medical history of suffering from depression and post traumatic stress disorder. In November 1992, Thomas was diagnosed with major depression recurrent in partial remission with multiple psycho social stressors. R. 329.[1] The records from the Christian County, Illinois, Mental Health Associates show that she was treated by a psychiatrist, Dr. Obul Reddy, M.D., from 1992 to 2003. R. 282-329. Thomas moved to Florida in 2003, but returned to Illinois in November 2004.

---

[1] The records refer to Thomas as Barbara Wells. Wells was her last name before she married in 2008.

Upon her return to Illinois, Thomas started seeing Mr. Peter Corso, a licensed counselor, on November 16, 2004. R. 404. Corso noted that Thomas' depression was relatively controlled, but she became more depressed in the winter. He assessed her with a Global Assessment of Functioning (GAF) score of 65. R. 404. The GAF scale reflects a clinician's assessment of an individual's symptom severity or level of social, occupational, or school functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed., Text Rev. 2000). A GAF score of 61 to 70 means mild symptoms or some difficulty in functioning, but generally functioning pretty well. A GAF score of 51 to 60 means some moderate symptoms or moderate difficulty in functioning. A GAF score of 41 to 50 means serious symptoms or serious difficulty in functioning. Id. at 34.

On December 20, 2004, Corso noted that Thomas was non-symptomatic and she stated that she felt stable. He assessed a GAF score of 69. R. 403. She saw Corso on a monthly basis throughout 2004 and 2005. He assessed her GAF score as ranging from 60 top 70. R. 402-400, 395-97, 390-93, 388.

Thomas saw Dr. Reddy on February 23, 2005, Dr. Reddy noted that her thinking was logical, coherent, and goal directed. He found that her concentration was fair, her retention and recall were not impaired, she had

no other memory deficits, her judgment and insight were fair, and she had no other sensorium deficits. R. 279-80. Dr. Reddy listed her diagnosis as major depression and mixed personality traits. R. 280. He assessed her with a GAF score of 51. Dr. Reddy prescribed Prozac and Imipramine. R. 279.

Thomas saw Dr. Reddy again on June 1, 2005. Dr. Reddy noted that Thomas was reasonably stable on her current medications. He continued the medications and assessed her with a GAF score of 58. R. 278. On November 2, 2005, Dr. Reddy noted that Thomas was doing poorly. He increased her Prozac dosage from 20 mg to 40 mg. He assessed her with a GAF score of 45. R. 277.

Thomas saw Dr. Reddy again on March 8, 2006. Thomas reported that she switched from generic to name brand medication and felt much better. Dr. Reddy noted that she was significantly improved and assessed her GAF score as 51. R. 275. Corso saw Thomas on March 13, 2006. He assessed her GAF score as 70 and noted that she was stable. R. 378. On April 10, 2006, Corso noted that her condition is gradually improving. He assessed her with a GAF score of 65. R. 377. In May and June 2006, Corso assessed Thomas with a GAF score of 62 and 63 respectively. R. 375-76.

On June 14, 2006, Dr. Reddy noted that Thomas was quite stable and coming along well.  He assessed her GAF score at 59.  R. 274.  On September 20, 2006, Dr. Reddy noted that Thomas' moods were reasonably stable and noted no new difficulties.  He assessed her GAF score at 51.  R. 273.  After the September 2006, Corso changed his format of progress notes and stopped assessing a GAF score.  R. 333-73.

On November 29, 2006, Thomas reported to Dr. Reddy that she was not doing well with low energy, no interest, and lots of ups and downs.  She reported getting into trouble at work because of her emotional stress. R. 272.  Dr. Reddy recommended sitting in front of a light for a half hour in the morning and in the evening.  Dr. Reddy assessed her GAF score as 45. R. 272.  On December 19, 2006, Corso noted that Thomas' mood was down and she had some seasonally related depression.  R. 362.

Thomas lost her job on January 1, 2007.  Corso noted that Thomas was more depressed at her meetings with him on January 17, 2007 and February 26, 2007.  R. 360-61. Thomas saw Dr. Reddy on February 28, 2007.  She reported losing her job, being more depressed, being irritable and forgetful, and having problems with her memory.  She reported not remembering what she did for chunks of time.  Dr. Reddy assessed her with a GAF score of 41 at that time.   He did not change her medication. R. 271.

On May 7, 2007, Corso noted that Thomas' depression was starting to ameliorate, but her moods were still up and down.  R. 356.

On May 30, 2007, Dr. Reddy noted that Thomas' moods were barely stable and she had some break through depressive symptoms.  He again assessed her with a GAF score of 41, and did not change her medication.  R. 270.  On June 6, 2007, Corso noted some progress and that Thomas was compliant with her medications.  R. 353.  On July 25, 2007, Corso noted Thomas had improved her coping ability and remained compliant with her medications.  R. 351.

On August 29, 2007, Thomas reported moving to a new apartment and doing better.  Dr. Reddy noted that Thomas remain dysphoric, but her general moods and noted that she was "coming along much better."  He again assessed her with a GAF score of 45.  R. 269.  He did not change her medications.

On October 22, 2007, Corso noted that Thomas had improved significantly.  R. 345.  On November 28, 2007, Thomas reported that she had stopped taking her medications, started exercising and lost 26 pounds.  R. 268.  Thomas reported that it was the best she had felt in years.  R. 268.  Dr. Reddy assessed her GAF score at 52 and diagnosed her depression as abated.  R. 268.

Thomas saw Dr. Reddy again on May 7, 2008.  She reported that she spent the winter in Florida.  She said that she had some ups and downs.  R. 266.  Dr. Reddy noted that Thomas' depression was controlled pretty well and assessed a GAF score of 55.  R. 266.  On May 21, 2008, Mr. Corso noted that Thomas was very happy and was compliant with her medications.

Thomas applied for Disability Benefits on June 30, 2008.  Thomas alleged that she became disabled on January 1, 2007, when she lost her job as a care giver.  R. 136, 140.

On July 2, 2008, Thomas saw Corso.  Corso noted that Thomas was depressed after being newly married for about a month.  She felt anxious.  He noted a marked impairment in social and occupational functioning.  R. 335.  On July 30, 2008, Thomas saw Dr. Reddy.  Thomas' new husband accompanied her on this visit.  She told Dr. Reddy that she was applying for disability benefits.  R. 265.  Dr. Reddy noted that her depression was fairly well contained.  He also noted that she was chronically dysfunctional and needs to go on disability.  R. 265.  Dr. Reddy assessed a GAF score of 51.  R. 265.

On September 29, 2008, psychologist Dr. Howard Tin, Psy.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment.  R. 405-22.  Dr. Tin found that Thomas had mild

restrictions in her daily living activities and social functioning, moderate restriction in maintaining concentration, persistence and pace, and no episodes of extended decompensation.  R. 415.  Dr. Tin opined that Thomas could carry out short and simple instructions, interact appropriately with the public and coworkers, and respond appropriately to changes in work settings.  R. 421.

On November 14, 2008, Dr. Hima Atluri, M.D., performed a consultative examination of Thomas.  R. 425-28.  Dr. Atluri reviewed Thomas' medical history and noted that she had a history of depression and post-traumatic stress disorder.  R. 425.  Dr. Atluri found no physical abnormalities.  Dr. Atluri's neurological examination was also normal.  Dr. Atluri psychological findings were also normal.  R. 427.[2]  The diagnostic impression listed severe anxiety and depression, severe post-traumatic stress disorder, and mild obesity.  R. 427-28.

On December 8, 2008, Dr. Donald Henson, Ph.D., reviewed the medical evidence and affirmed Dr. Tin's opinions.  R. 429-34.

On January 6, 2010, Dr. Reddy completed a Listing of Impairments form.  R. 435.  Dr. Reddy opined that Thomas had marked difficulties in maintaining social functioning and maintaining concentration, persistence

---

[2]Dr. Atluri stated that a Mini Mental Status Exam was attached to his report.  R. 427.  No such document is in the Official Transcript.

and pace, and well as repeated episodes of extended decompensation. R. 436. Dr. Reddy opined that Thomas' condition met the requirements for Listing 12.04 for Affective Disorders set forth in the Social Security regulation's Listings of disabling disorders. R. 435-36. See 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listings), Listing 12.04.

Listing 12.04 is divided into three paragraphs: A, B, and C. To meet Listing 12.04, a person must meet the requirements of both paragraphs A and B, or meet the requirements of paragraph C. Paragraph A requires medically documented persistence of a depressive, manic, or bipolar syndrome with certain characteristics. Paragraph B requires that the person exhibit two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.

In the alternative, paragraph C requires a medically documented history of a chronic affective disorder of at least two years duration that has caused more than minimal limitation in the ability to do basic work activities, with symptoms controlled by medication and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that is severe enough that even a minimal change in circumstance would cause the person to decompensate; or (3) current

history of one or more years' inability to function outside of highly supportive living arrangement.  Listing 12.04.  Marked means more than moderate, but less than extreme.  Listing 12.00.C.

Decompensation means an exacerbation or temporary increase in symptoms that is accompanied by an inability to function.  Listing 12.00.C.4.  Such an episode generally results in a significant change in medication or a need for a change to a more structured psychological support system.  Id.  Repeated episodes of decompensation, each of extended duration, means three episodes within a year, or an average of once every four months, each lasting for at least two weeks.  Listing 12.00.C and 12.00.C.4.  See R. 15.

Dr. Reddy opined with respect to paragraph B that Thomas had marked difficulties in maintaining social functioning and maintaining concentration, persistence, and pace, and also had suffered from repeated decompensation, each of extended duration.  R. 435-36.  Dr. Reddy opined with respect to paragraph C that Thomas had suffered from repeated decompensation, each of extended duration, and had a residual disease process that is severe enough that even a minimal change in circumstance would cause the person to decompensate.  R. 435-36.

The Administrative Law Judge (ALJ) held an administrative hearing on February 4, 2010.  Thomas appeared with her counsel.  Vocational

expert Barbara E. Meyers appeared by telephone.  Only Thomas testified at the hearing.  Thomas testified that she lost her last job as a care giver in a residence home on January 1, 2007, because she could not cope with the responsibilities.  R. 36.  Thomas stated that she felt like she had to be in three places at once.  R. 39.

Thomas testified about other jobs she had in the fifteen years prior to he alleged disability.  She worked in a factory assembling electronic items for aircraft.  R. 43.  She had a home business in the 1990s raising cockatiels and other birds.  R. 44-46.  She worked at Walmart as a cashier in 2003 and 2004.  R. 47-48.  She worked as a care giver beginning in 2005 until January 1, 2007.  R. 48.

Thomas testified that she lived with her husband in a one-story house with a basement.  R. 49.  Thomas testified that she had no physical limitations that affected her ability to work.  R. 49.  She testified that she took daily walks with her husband and went to church twice a week for worship and Bible study.  R. 50-51.

Thomas took Prozac and Imipramine every day.  Thomas saw Dr. Reddy quarterly and Mr. Corso monthly.  R. 56-57.  She testified that she started seeing Dr. Reddy in 1992.  R. 53-54.  Thomas moved to Florida in 2003 and lived there until 2005.  R. 54.  She testified that she went to a mental health clinic while she was there.  R. 54.

Thomas testified that she did not do much during the day because she felt overwhelmed. She testified that she forgot things because she could not stay focused. R. 60-61. She testified that on bad days she would stay in bed. R. 62. Thomas had three birds and a cat at home as pets. R. 64.

Thomas testified that she married her husband in 2008. The couple honeymooned in Bloomington, Illinois. R. 65. They also went on a vacation to Florida in October 2009. R. 66. At the completion of Thomas' testimony, the ALJ concluded the hearing.

## THE DECISION OF THE ALJ

The ALJ issued his decision on March 12, 2010. R. 8-17. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant's condition or combination of conditions must meet the criteria for

one of the conditions set forth in the Listings or be equal to the criteria in one of the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the claimant not to be able to return to her prior work considering his Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Thomas met her burden at Steps 1 and 2. She had not engaged in substantial gainful activity since January 1, 2007, and she suffered from severe impairments of depression, post traumatic stress disorder, and anxiety. R. 14. At Step 3, the ALJ found that Thomas did not have an impairment or combination of impairments that met or equaled any Listing. R. 14.

The ALJ considered Listings 12.04 for Affective Disorders.[3] The ALJ focused on paragraphs B and C. The ALJ found that Thomas did not meet either paragraph. The ALJ found that Thomas had mild restrictions on daily living. The ALJ relied on the fact that Thomas took care of her personal needs, performed household chores, and cared for her pets on a daily basis. The ALJ found mild difficulties in social functioning. The ALJ relied on the fact that Thomas went to church regularly and recently married. The ALJ found moderate limitations on concentration, persistence, and pace. The ALJ stated that Thomas was forgetful, but completed routine tasks and was able to monitor her medication by herself. The ALJ found no evidence of decompensation. R. 15.

In making these findings, the ALJ discounted the January 2010 opinions of Dr. Reddy. The ALJ found that Dr. Reddy's opinions of marked limitations and repeated episodes of decompensation were not consistent with his own treatment notes or the treatment notes of Mr. Corso. The ALJ also relied Dr. Tin's opinions. The ALJ reviewed the record and found no evidence to support Dr. Reddy's opinions. R. 15.

At Step 4, the ALJ found that Thomas had the RFC to perform a full range of work at all exertional levels but was limited to simple repetitive

---

[3] The ALJ also considered Listing 12.06 for Anxiety Disorders. Dr. Reddy did not opine that Thomas met Listing 12.06, and Thomas does not raise Listing 12.06 in the appeal. The Court, therefore, does not discuss Listing 12.06 in this Opinion.

tasks. The ALJ relied on Dr. Atluri's examination and Thomas' testimony regarding her physical abilities and her activities to find no exertional limitations. The ALJ relied on Thomas' activities and social interactions (such as daily walks, regular church attendance and Bible study, trips and vacations, and her marriage) to support his conclusion that her mental limitations were adequately addressed by limiting her to simple repetitive tasks. The ALJ also relied on Dr. Tin's opinions, Dr. Atluri's finding of no mental status abnormalities, and Mr. Corso's progress notes to support the nonexertional limitations. The ALJ rejected Dr. Reddy's opinions as inconsistent with all of this other evidence. R. 16-18. Based on the RFC finding, the ALJ found that Thomas could perform her prior work as a cashier. R. 18.

In the alternative at Step 5, the ALJ found that Thomas could perform a significant number of jobs that exist in the national economy. The ALJ relied on the Medical-Vocational Rules to reached this conclusion. R. 18; 20 C.F.R. Part 404, Subpart P, Appendix 2 (Grid). The ALJ found that Thomas was a person of advanced age with a high school education and no transferable skills who has the physical capacity to perform all work at all exertional levels. Such person is not disabled under the Grid Rule 204.00. See R. 18-19. Thus, the ALJ concluded that Thomas was not disabled.

Thomas appealed. The Appeals Council denied Thomas' request for review on January 19, 2011. Thomas then brought this action for judicial review.

ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. In making this review, the Court considers the evidence that was before the ALJ. Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

Thomas raises one issue on appeal. She asserts that the ALJ erred by accepting Dr. Tin's opinion over Dr. Reddy. She argues that the ALJ should have given Dr. Reddy's opinion controlling weight because he was Thomas' treating physician. A treating physician's medical opinion is

entitled to controlling weight when it is well supported by medically acceptable clinical and diagnostic techniques and is reasonably consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

In this case, however, the evidence supports the ALJ's conclusion that Dr. Reddy's opinions were not supported by the medical evidence and were not consistent with the other substantial evidence in the record. Dr. Reddy opined that Thomas had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence and pace. Dr. Reddy's progress notes and those of Mr. Corso are not consistent with that finding. Both noted improvement in Thomas' condition in late 2007 and 2008. In addition, Thomas' actions were inconsistent with those findings. Thomas got married, went on a honeymoon and a vacation to Florida in 2008. She also took care of three pets, took daily walks with her husband, and attended church and Bible Study on a regular basis. Those actions are also inconsistent with a marked difficulty in maintaining social functioning at a minimum.

Dr. Reddy also opined that Thomas suffered from repeated episodes of decompensation, each of extended duration. There is no evidence to support this opinion at all. The treatment notes contain no evidence that Thomas ever suffered an episode of severe symptoms that required either

a significant change in her medication or implementation of a more structured psychological support system.  Her Prozac dosage varied from 20 to 40 mg, but otherwise her medication did not change.  Her pattern of monthly counseling sessions with Corso and quarterly visits to Dr. Reddy remained the same since February 2005.  There is no medical evidence to support Dr. Reddy's opinion regarding decompensation.

      Dr. Reddy also opined that her residual disease process has resulted in such marginal adjustment that even a minimal increase in mental demands or change in circumstance would likely cause her to decompensate.  There is again no medical evidence to support this opinion.  The medical progress notes document that Thomas experienced major changes in her life in 2007 and 2008, but did not decompensate.  She lost a job and got married.   Thomas became more depressed when she suffered a job loss in early 2007, but she did not require a significant change in her medication or a significant change in her psychological support system.  She became depressed a month after getting married, but did not decompensate.  No medical evidence supports this opinion.

      Corso's opinion of Thomas' GAF score was also consistently ten to twenty points higher than Dr. Reddy's.  Corso's higher GAF scores support the ALJ's findings of mild to moderate restrictions rather than marked restrictions.  Corso is not a physician and so not a medical source, but the

ALJ can consider his opinions as evidence.  See 29 C.F.R. § 404.1513(a) and (d)(1).

Thomas argues that Dr. Atluri's diagnoses of severe anxiety and depression and severe post-traumatic stress disorder support Dr. Reddy's opinions.  The Court disagrees.  The ALJ properly viewed those diagnoses as a reflection of the medical history that he reviewed.  Dr. Atluri also found no psychological abnormalities in his mental status examination.  This finding conflicts with Dr. Reddy's opinions and supports the ALJ's conclusions.

Given the lack of support for Dr. Reddy's opinions in the medical record, the ALJ's was not required to give controlling weight to those opinions.  Dr. Tin's opinion and the progress notes from both Dr. Reddy and Mr. Corso provide substantial evidence to support the ALJ's decision at Step 3 that Thomas's condition or combination of conditions did not meet Listing 12.04 or any other Listing.  Dr. Tin's opinions, Dr. Atluri's physical examination findings, and Thomas' testimony about her physical capabilities and her activities support the ALJ's RFC finding and his conclusion at Step 4 that Thomas could perform her former work as a cashier.  The Medical-Vocational Rule 204.00 supports the ALJ's conclusion at Step 5 that Thomas was not disabled.  The Commissioner's decision is, therefore, affirmed.

WHEREFORE, Plaintiff's Motion for Summary Judgment (d/e 20) is DENIED, and Defendant Commissioner of Social Security has filed a Motion for Summary Affirmance (d/e 22) which is ALLOWED.  The Decision of the Commissioner is AFFIRMED.  THIS CASE IS CLOSED.

ENTER: February 2, 2012

                 *s/ Byron G. Cudmore*
                 BYRON G. CUDMORE
           UNITED STATES MAGISTRATE JUDGE